UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE BRIGNER, as Next of Friend of
HANNAH BRIGNER-TAYLOR, a minor,

      Plaintiff,

v.

MICHAEL MEKARU, M.D., et al.,

      Defendants.
_____/

File No. 1:15-cv-757

HON. ROBERT HOLMES BELL

## **OPINION**

On May 27, 2015, Plaintiff Carrie Brigner filed a complaint in Mecosta County Circuit Court on behalf of Hannah Brigner-Taylor, an incapacitated minor. (Compl., ECF No. 1-1.) Plaintiff's complaint alleges that Defendants Michael Mekaru, M.D., Tracy J. Winters, M.D., Mecosta County Medical Center, and Pediatric Associates of Big Rapids, P.C. (Defendants) negligently failed to resuscitate the minor Plaintiff after she was born. As a result, Plaintiff raised a claim of medical negligence under state law against each Defendant.

Defendant Mecosta County Medical Center (Mecosta) is a health institution that conducts business in the County of Mecosta, Michigan. Mecosta is authorized to provide healthcare to persons eligible to receive Medicaid and Medicare through the Michigan Department of Community Health (MDCH), which is a United States Department of Health and Human Services (HHS) delegate. (Notice of Removal ¶ 5, ECF No. 1.) Mecosta states that "[a]s an approved Medicaid/Medicare provider," it is "required to follow

Medicaid/Medicare directives and . . . expected to comply with utilization and professional protocols decided on by federally designated Quality Improvement Organizations (QIO)." (*Id.* ¶ 7.)

Although Plaintiff's complaint raises only state-law claims, Mecosta removed the matter to this Court on July 23, 2015, and the remaining Defendants joined and consented to the removal (ECF No. 5). Plaintiff subsequently filed a motion to remand the matter back to state court. (ECF No. 10.) For the reasons that follow, Plaintiff's motion will be granted.

### I.

In deciding a motion to remand, this Court must determine whether it has original jurisdiction over the case. *See* 28 U.S.C. §§ 1441, 1447. "Unlike state trial courts, [federal courts] do not have general jurisdiction to review questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve." *Ohio* ex rel. *Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). "When a party opts to file a complaint in state court, the federal courts must honor that choice unless Congress has authorized removal of the case." *Id.* (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998); 28 U.S.C. § 1441(a)). "Absent diverse parties or absent one of the other express (though rarely relied upon) grounds for removal . . . the defendant may take the dispute to federal court only if the plaintiff's claim 'aris[es] under' federal law, 28 U.S.C. § 1441(b)." *Id.* (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc)). "A defendant who wishes to remove his or her case to federal court

has the burden to prove that the Court possesses jurisdiction." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)).

## II.

Mecosta asserts that Plaintiff's motion to remand should be denied on two separate grounds. First, Mecosta argues that it qualifies as a federal officer and, therefore, removal was proper under 28 U.S.C. § 1442(a)(1). Next, Mecosta contends that both 42 U.S.C. § 1320c–6 and 42 U.S.C. § 1395ff(c)(5) completely preempt a state-law cause of action against it and, therefore, Plaintiff's claims are based on federal law.

### A. Federal Officer Removal

Mecosta, like many medical centers around the country, is an approved Medicare/Medicaid provider. As a result of Medicare and Medicaid's association with HHS and the United States Centers for Medicare and Medicaid Services (CMS), it contends that it–and, consequently, every approved Medicare or Medicaid provider–may remove any claim of medical negligence to federal court based on federal officer removal under 28 U.S.C. § 1442(a)(1). The Court disagrees.

The federal officer removal statute allows defendants to remove to federal court state-court actions brought against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." 28

U.S.C. § 1442(a)(1). In enacting this statute, Congress aimed to shield federal officers from prejudicial rulings made by state courts and the juries comprising state courts:

> [T]he removal statute's "basic" purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority.

*Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) (internal quotation marks omitted).

In *Bennett v MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010), the court stated that if the defendant itself is not itself a federal officer, it must satisfy a three-prong test before removing the case under 28 U.S.C. § 1442(a)(1). Under this test, Mecosta must show: (1) that "it is a 'person' within the meaning of the statute who act[ed] under [a federal] officer"; (2) "that it performed the actions for which it is being sued under color of federal office"; and (3) "that it raised a colorable federal offense." *Id.* (citations omitted). *Id.* at 1085.

Essentially, Mecosta contends that given its compliance with the "thick, published guidelines" governing Medicare/Medicaid, it is acting under a federal officer–specifically, CMS or HHS. This argument is unavailing. Because Mecosta has failed to show that it is a "person" who "acted under a federal officer," its claim fails.

In *Watson*, the Supreme Court explained the "acting under" requirement of federal officer removal. 551 U.S. at 150. Philip Morris branded certain cigarettes as "light," indicating lower than normal tar and nicotine levels. *Id.* at 146. The petitioners argued that the testing method used by Philip Morris was designed to register lower levels of tar and

nicotine than consumers would experience when smoking. *Id.* The FTC exercised "detailed supervision of the cigarette testing process" and, as a result, the district court and court of appeals found that federal officer removal was proper because Philip Morris was "acting under" the FTC. *Id.* at 147. The Supreme Court disagreed. The Court noted that:

> A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

*Id.* at 153. The Court noted that federal officer removal may be proper under circumstances where "[t]he assistance that private contractors provide goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id.* The Court further indicated that a formal delegation of legal authority from the FTC to the industry association to undertake testing on the FTC's behalf may have authorized Philip Morris to remove the case. *See id.* The Court concluded, however, that "the FTC's detailed rules about advertising, specifications for testing, requirements about reporting results, and the like," and Philip Morris's compliance with these rules and regulations, did not warrant federal officer removal. *Id.* at 157.

*Bennett* provides an example of when a private firm does fall under the scope of the statutory phrase "acting under" a federal "official." In *Bennett*, the Sixth Circuit held that a

private mold remediation firm (MIS) hired by the Federal Aviation Administration (FAA) was "acting under the FAA." 607 F.3d at 1088. The court first noted that the FAA contracts "included precise specifications" for the mold removal and disposal. *Id.* at 1087. Further,

> [f]ederal officers closely monitored MIS's work. Specifically, each contract designated a federal officer who "direct[ly]" supervised each remediation. These on-site federal officers (hereinafter "FAA contracting officers") were prohibited from modifying or deviating from the FAA's specifications without first obtaining the "signature of the [Lead] Contractor Officer," Judy Ryckman, also an FAA officer. Furthermore, FAA contracting officers had the authority to "require" MIS to "dismiss from work those [MIS] employees which [they] deem[ed] incompetent, insubordinate, unsuitable, or otherwise objectionable." The FAA also controlled the working hours of MIS employees, who were "escorted by FAA personnel at all times[,]" and were prohibited from entering the work site without prior FAA approval.

*Id.* at 1087-88. The court stated that, "'unlike the cigarette manufacturer in *Watson*, MIS's assistance went beyond 'simple compliance with the law.'" *Id.* (quoting *Watson*, 551 U.S. at 153). Rather, "the contractual relationship between [MIS] and [the FAA] [was] an unusually close one[,] involving detailed regulation, monitoring, [and] supervision." *Id.*

The unusually close relationship between MIS and the FAA does not exist between Mecosta and CMS or HHS. Mecosta erroneously states that "[w]hen a private contractor is sued because it has undertaken a task and performed it under the specifications of an Agency like CMS/Medicare, and/or its intermediary delegate with thick, published guidelines for the task, there is federal officer authority to remove the case into federal court." (Defs.' Br. at 14.) But *Watson* held precisely the opposite. Mecosta's assertion that federal officer removal is proper because it "complies with medical practice norms developed by

6

HHS/CMS/MDCH" (Defs.' Br. at 13), is analogous to Philip Morris's compliance with FTC regulations and, as the Supreme Court indicated, simple compliance with regulations or laws does not equate to "acting under" the agency or federal officer who implements those regulations. Mecosta has not indicated that CMS or HHS "closely monitor" its work, that federal officials from those agencies "directly supervise" Mecosta, that CMS or HHS officers have the authority to dismiss Mecosta employees, or that CMS or HHS officers control the working hours of Mecosta employees. *See Bennett*, 607 F.3d at 1087-88. Accordingly, Mecosta's argument that 28 U.S.C. § 1442(a)(1) justifies removal fails.

## B. Federal Question Jurisdiction

Mecosta next argues that Plaintiff's complaint, while raising only state law claims, in reality turns on a question of federal law and, therefore, this Court has jurisdiction under 28 U.S.C. § 1331. Mecosta contends that "'the Well Plead Complaint' Rule ought not to be wholly controlling as to federal question" (Defs.' Br. at 19), and bases this argument on two separate grounds.

### 1. Statutory Immunity

Federal question jurisdiction exists if the civil action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The Supreme Court has made clear that, to determine whether a claim arises under federal law, a court, under the 'well-pleaded complaint' rule, generally looks only to the plaintiff's complaint." *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109

(1936); *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149 (1908)). If the complaint contains only state-law claims, "the district court generally lacks subject matter jurisdiction and the action is not removable." *Id.*

Mecosta asserts, however, that the complete preemption doctrine–an exception to the well-pleaded complaint rule–applies in this case. Mecosta contends that both 42 U.S.C. § 1320c–6 and 42 U.S.C. § 1395ff(c)(5) provide Mecosta with blanket immunity from state tort claims and therefore preempt a state-law cause of action against it. Consequently, Mecosta argues, Plaintiff's claims are in fact based on federal law and a federal question exists.

The doctrine of complete preemption applies "when a federal statute wholly displaces the state-law cause of action." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b)[.]" *Id.*

If this Court were to adopt Mecosta's position, federal jurisdiction would exist over every state-law claim of medical negligence brought against an approved Medicare/Medicaid provider. No court has ever made such a finding, and this Court finds that Congress did not intend to create such a result in a subchapter of the Code that pertains only to "peer review organizations."

>The purpose of 42 U.S.C. §1320c is:
>
>[T]o establish the contracting process which the [HHS] Secretary must follow pursuant to the requirements of section 1395y(g) of this title, including the definition of the *quality improvement organizations* with which the Secretary shall contract, the functions *such quality improvement organizations* are to perform, the confidentiality of medical records, and related administrative matters to facilitate the carrying out of the purposes of this part.

*Id.* (emphasis added). Quality improvement organizations (QIOs) are peer-review organizations made up of at least one individual who is a representative of health care providers and one individual who represents consumers, *id.* § 1320c–1, and they evaluate entities that receive reimbursements under the Medicare program, *id.* § 1320c–3. The QIOs determine whether services provided by Medicare providers and physicians "were reasonable and medically necessary," evaluate whether "the quality of such services meets professionally recognized standards of health care," and evaluate whether services and items could be provided "more economically on an outpatient basis or in an inpatient health care facility of a different type." *Id.* § 1320c–3(a)(1).

Mecosta is not a QIO, and the Court agrees with other district courts that have addressed the matter and found that 42 U.S.C. § 1320c was not meant to provide all physicians and health care providers associated with Medicare and Medicaid with complete immunity from state tort claims. *See N.G. v. Downey Reg'l Med. Ctr.*, No. CV-15-06597, 2015 WL 6453074, at *4 (C.D. Cal. Oct. 23, 2015) ("Nothing in 42 U.S.C. § 1320c *et seq.* suggests that the statutes were designed to provide private physicians or private hospitals with immunity from malpractice or negligence suits."); *see also Schmidt ex rel. Schmidt v.*

9

*Ramsey*, No. CV 13-143, 2013 WL 6178533, at *3-4 (D. Neb. Nov. 25, 2013) ("Nothing in 42 U.S.C. § 1320c *et seq.* suggests that the statutes were designed to supplant common law tort actions for professional malpractice.").

Moreover, even assuming that section 1320c–6 does provide all approved Medicare/Medicaid providers with blanket immunity from state tort claims, section 1320c–6 applies only when a provider is acting "in compliance or reliance upon professionally developed norms of care and treatment applied by an organization under contract pursuant to section 1320c–2." 42 U.S.C. § 1320c–6. Despite noting the "thick, published guidelines" governing Medicare and Medicaid, Mecosta, similar to the defendants in *Downey*, has made only a general allegation that it was following QIO directives when the allegedly negligent actions occurred. Mecosta stated that it "is expected to comply with utilization and professional protocols decided on by federally designated Quality Improvement Organizations." (Notice for Removal ¶ 7.) Like the *Downey* court, this Court finds that "such a claim is too conclusory to establish that Defendant was following QIO directives" and, therefore, Mecosta "cannot rely on 42 U.S.C. § 1320c–6 to invoke the statute's immunity." 2015 WL 6453074, at *4.

Mecosta also argues that it is entitled to "secondary immunity" under 42 U.S.C. § 1395ff(c)(5). Section 1395ff governs Medicare determinations and appeals of Medicare determinations. Section 1395ff(c) discusses independent contractors who enter into contracts with the Secretary to "conduct reconsiderations of initial [Medicare] determinations." *Id.* § 1395ff(c)(1). Section 1395ff(c)(5) provides immunity from civil

10

liability to "qualified independent contractors" who use due care in performing the duties, functions, or activities detailed in section 1395ff(c). Because Mecosta does not claim to be an independent contractor participating in the Medicare appeal determination process, it does not qualify for immunity under this section.

Accordingly, Mecosta has not shown that sections 1320c–6 or 1395ff were meant to completely preempt state tort law and, therefore, a federal question has not been created.

### 2. *Jefferson County* Removal

Lastly, Mecosta argues that under *Jefferson County, Alabama v. Acker*, 527 U.S. 423 (1999), "the Well Pleaded Complaint" Rule for federal question removal is neutered by resolution of the right to remove as a federal officer." (Defs.' Br. at 1.) *Jefferson County* held that "[u]nder the federal officer removal statute, *suits against federal officers* may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." 527 U.S. at 431 (emphasis added). As stated above, Mecosta–a county medical center–is not a federal officer. Accordingly, *Jefferson County* is inapplicable.

### III.

For the reasons stated above, Plaintiff's motion to remand this case back to the Circuit Court for the County of Mecosta, Michigan will be granted.

An Order will enter consistent with this Opinion.


Dated: November 9, 2015                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE